[Crim. No. 1188. Third Appellate District.—March 31, 1932.]

THE PEOPLE, Respondent, v. E. A. LITTLE, Appellant.

J. R. King, Jr., for Appellant.

U. S. Webb, Attorney-General; and J. Charles Jones, Deputy Attorney-General, for Respondent.

THE COURT.—Defendant was convicted by a jury of a violation of section 288 of the Penal Code.

A motion for a new trial was made and denied. From the judgment and order denying a new trial, the defendant prosecutes this appeal.

The crime for which defendant was convicted was alleged to have been committed on the night of August 1, 1931, between 11 and 12 o'clock, in an automobile which was parked near a dance-hall, at Durham in Butte County. The defendant was attending the dance and while there met the prosecutrix, a girl of the age of six years, who was in the company of her father and mother and younger

brother. Previous to this night, defendant had known the child and her family for about a year and was upon friendly terms with all the family.

The defendant, with the consent of the parents of the child, took the prosecutrix and her younger brother from the dance platform to his car to put them to sleep. Defendant returned to the dance platform shortly afterward with the younger child, who was crying.

It was testified to by the prosecutrix that the defendant returned to the car and perpetrated the acts for which he was convicted.

The prosecutrix was the only witness to the crime. The child made no outcry or complaint against the defendant at the time. It was not until one week later that the mother, by questioning the child, drew from her the story of the alleged crime. The following day, with full knowledge of the story told by the child, the mother met the defendant at the home of a neighbor, and spent several hours in his company, allowing him to play with her younger child, and made no charge against him at that time.

Three contentions are made for a reversal of the judgment. We will consider the last contention, which, in our opinion, necessitates a reversal of the judgment and order.

■ Appellant strenuously contends that the conduct of the trial judge was prejudicial to the rights of the defendant.

In order to fully understand the seriousness of this contention, it will be necessary to state more of the facts and circumstances occurring during the progress of the trial. Mrs. Clark, the mother of the girl, testified that the girl complained of soreness around her private parts and that "her limbs broke out in sort of blisters". Dr. E. A. Kusel also testified for the prosecution to the effect that he examined the little girl about August 10, 1931, which was about ten days after the commission of the alleged offense, and discovered that she had a discharge from her privates, and that this discharge was of gonorrheal origin. From the testimony of these two witnesses, the prosecution contended that defendant, in the commission of the acts complained of, transmitted gonorrhea to the child.

To contradict this testimony, the defense produced as its witness Dr. Kilduff, a duly licensed physician and surgeon. During the progress of the examination of Dr. Kilduff by

Mr. King, attorney for the defendant, and after a few preliminary questions had been asked, the following proceedings occurred in open court in the presence of the jury:

"Mr. King: Q. Doctor, state whether or not, you have examined Mr. Bill Little for any communicable disease? A. I examined him. . . . Q. When did that examination take place? A. Last Thursday or Friday, I forgot which date. Q. Will you tell the jury just what sort of examination you made? Mr. McPherson, prosecuting attorney: We are objecting to this line of testimony on the ground it is not a proper portion of the allegations of the *res gestae* of this case. The Court: The objection may be overruled. The witness: Shall I answer the question? Mr. King: . . . Tell the jury what your examination was without using the name of the disease. A. I was asked to examine the defendant to find out whether he had a certain disease. The Court: Who asked you to do that? A. Mr. King. Mr. McPherson: I am again objecting to the testimony of this man upon the ground that a proper court order was not had for the examination of this defendant, and that this defendant was offered an examination by three physicians. The Court: *I want it to go before the jury as to how he came to examine him and I asked the question, and he said Mr. King asked him. To the Clerk: Mr. Clerk, was there any court order directing Dr. Kilduff to examine this man? The Clerk: There was not, your Honor. The Court: You stipulate there was not? Mr. King: There was not—* Oh, yes, by the way, just a moment. The Court: Just a moment. Mr. King: Now, just a moment, your Honor. The Court: Now, you, just a moment . . . are you objecting on the ground it was too remote from the first of August? Mr. McPherson: I certainly am. Here is my objection in that regard . . . Mr. King, interrupting: We will object to his Honor's suggestion in directing the district attorney what his objections should be, and I assign that suggestion as prejudicial to the rights of my client and ask that the jury be instructed to disregard that question. It is certainly unfair. The Court: You mean his objection is highly unfair? Mr. King: The court instructs the district attorney as to what to object to? The Court: Now, I do not do that. I want to get his ground of objection, and I simply asked him if he was objecting on the ground it was too late, that is, . . . Mr. King: The dis-

278

trict attorney had not mentioned that. . . . The Court: *Never mind, Mr. McPherson, did I for the first time apprise you to make the kind of an objection, or did you have it in your mind?* Mr. McPherson: *I have three lines of objections in my mind as to the testimony of this witness, I am objecting on the ground. . . . Court, interrupting: You have not answered my question.* Mr. McPherson: *No, you did not. The Court: Did you have it in mind?* Mr. McPherson: I certainly did. The Court: Very well, proceed. Mr. McPherson: My objection is this, that the testimony of this witness is entirely incompetent, immaterial and of no consequence and no part of the *res gestae* of this case. That is one point. The second point is that this man testified that he examined this man on the 28th of October. The Court: Last week some time, Thursday or Friday of last week. Mr. McPherson: My second objection is that it is too remote in point of time, and my third objection is that this defendant never secured a court order and was offered the services of the county physician previous to or at the time he was arrested. Mr. King: It is very true, your Honor, that he did not get a written paper from your Honor, saying that he could bring this letter into court in the courtroom, or that he examine the defendant; that is true, but for your Honor's recollection, the conversation I had with you in the chambers, that I asked you if I could bring in an independent doctor, and not the doctor who had been connected with the county; and I will call your Honor's attention and ask you to recall the conversation, and I believe it was with your Honor's permission that I called in this doctor. *The Court: Mr. King, didn't I request that in order to facilitate matters that Dr. Epperson, the county doctor, examine this man and you refused to agree to that? Mr. King: I did on the ground he was not a licensed M. D., and for that reason alone. The Court: Just a moment, now, bring Dr. Epperson in here, Mr. Sheriff.*

''Bailiff French: He is at the county hospital right now. *The Court: Call the county hospital and tell him we want him. . . . The Court to Mr. King: Regarding what you were saying about your private conversation with me, Mr. King, did not Dr. Epperson come to the jail and didn't you refuse to allow him to examine this man? Mr. King:* Your Honor, as I recall it, Dr. Epperson came in and

talked with the undersheriff, Mr. Alexander, and I was in the office at that time; and I heard Dr. Epperson inquire from the sheriff's office: 'Can I examine Bill Little?' and the sheriff's office said: 'No, you cannot.' I did not say a word—I did not say a word to Dr. Epperson. *The Court: Because you already refused—hadn't you before that refused to have Dr. Epperson examine him?* Mr. King: I do not recall that. *The Court: Didn't you tell me you did not want Dr. Epperson to examine him? Mr. King: As far as the conversation went in there it was on the ground of his not being a licensed M. D. and I did not think his testimony would be competent in this case. The Court: We will find out from him whether he is or not. Proceed.* Mr. McPherson: I certainly insist upon my objection to this question. The Court: The objection will be overruled. . . . Mr. King: *Q. Did you find any disease? A. No, I did not. Q. Did you find any signs that there might have been a disease previously? A. I did not find any signs, no. Q. You made a thorough examination, did you? A. Yes sir. Q. And you are positive of that are you? A. I am."*

After further examination of Dr. Kilduff, both direct and cross, and after a great deal of apparent hostile colloquy between Mr. King, attorney for the defendant, and the trial court, Dr. Epperson was called to the stand as a witness for the prosecution, and during the course of his examination the following proceeding took place in the presence of the jury:

The Court: *"Let him tell, I ordered Dr. Epperson to examine this man and the way I happened to do it was that I understood Mr. King, without any authority or anything of that kind, had brought Dr. Kilduff down there to examine this man and not being able to get into communication with you I thought the People should have a physician also and that a physician on each side should examine him and I requested it but it was not a court order, but I requested Dr. Epperson as the County Physician I would have—* Mr. King interrupting: I object to any reference to that and ask that the jury be admonished to disregard any reference made by Dr. Epperson to any conversation he had with me in the sheriff's office or anything else that he has testified to here today for the reason that he was not

ordered by the Court to come here except by the verbal order just now to bring in Dr. Epperson. The Court: *Your objection will be overruled. That is all, Dr. Epperson.*"

Many other remarks and statements made by the trial court during the progress of the trial and questions asked by the court of witnesses and counsel are also claimed to have been highly prejudicial to the rights of the defendant. It is unnecessary to set out any more of the record in detail. Suffice it to say, from the record, it appears that there was a running battle between the court and counsel for the defendant throughout the entire trial, and many remarks and statements made by the court were improper and prejudicial to the rights of defendant.

The examination of Dr. Epperson by the court before the jury amounted, in effect, to the trial court becoming a witness against the defendant.

The court brought before the jury the fact that defendant had refused to submit to a physical examination at the hands of Dr. Epperson.

The jury, from the statements and questions by the court, might well have inferred that the defendant had a venereal disease and therefore was guilty of the crime charged, or he would have submitted to the examination.

These unusual proceedings were also calculated to discredit the testimony of Dr. Kilduff, who had just testified that he had examined defendant and found no trace of gonorrhea in his system. The court was, in effect, contradicting the testimony of Dr. Kilduff.

The jury should have been allowed to impartially weigh all the evidence, both for the prosecution and the defense, uninfluenced by the trial court or anyone else.

When, as in this case, the trial court persists in making discourteous and disparaging remarks to defendant's witnesses and counsel and utters frequent statements, from which the jury may plainly perceive that the testimony of the witnesses for defendant is not believed by the judge, and in other ways discredits the cause of the defense, it has transcended so far beyond the pale of judicial fairness as to render a new trial necessary.

Neither can a plea for the application of section 4½ of article VI of the Constitution save the situation.

The fact that the record shows sufficient evidence to warrant a verdict of guilty in this case, does not necessarily determine that there has been no miscarriage of justice.

A careful examination of the entire record fully convinces us that defendant did not have that fair trial guaranteed to him by the law and the Constitution.

The judgment and order are reversed and a new trial ordered.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 15, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 28, 1932.